# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD LYNN MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 22-1594 (TSC) |
| | ) |
| MERRICK GARLAND, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Donald Lynn Martin brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552.[1] Defendants have moved for Summary Judgment (ECF No. 24), and for the reasons discussed below, the court GRANTS the motion.

I. BACKGROUND

This Memorandum Opinion pertains only to Plaintiff's April 28, 2022, FOIA Request No. EOUSA-2022-001858 to the Executive Office for United States Attorneys ("EOUSA"), a component of the United States Department of Justice ("DOJ"). EOUSA is responsible for coordinating "responses of the United States Attorneys' Offices to requests under . . . FOIA," Decl. for Tricia Francis (ECF No. 24-2, "Francis Decl.") ¶ 1, and its staff "processes and reviews . . . FOIA . . . requests," *id*. ¶ 3.

Defendants demonstrate, *see* Def.'s Statement of Material Facts Not In Genuine Dispute (ECF No. 24-2, "Def. SMF"), SMF ¶¶ 1, 6, 8-14, and Plaintiff concedes, *see* Resp. to Def. Mot. for Summ. J. (ECF No. 27, "Pl. Opp.") at 1-2, that summary judgment for Defendants is

---

[1] The court's November 14, 2022, Order (ECF No. 20) granted Defendants' Partial Motion to Dismiss (ECF No. 13), dismissed Merrick Garland as a party defendant, and dismissed Plaintiff's claim under the Administrative Procedure Act.

warranted with respect to FOIA requests to the Office of the Attorney General, dated January 11, 2022, and February 11, 2022, *see* Compl. for Injunctive Relief (ECF No. 1, "Compl."), Ex. A (ECF No. 1-1 at 2-3). Because Plaintiff's June 23, 2022, FOIA Request No. EOUSA-2022-002462 is a duplicate of the April 28, 2022, request, EOUSA closed it administratively. *See* Francis Decl. ¶¶ 29-31.

The records at issue in this case pertain to Jo E. Lawless, the Assistant United States Attorney ("AUSA") assigned to prosecute the criminal case against Plaintiff in the United States District Court for the Western District of Kentucky. It appears Lawless underwent elective surgery, took medical leave, and was not expected to return to work until after January 2, 2018, the date on which Plaintiff's criminal trial was to begin. *See* Compl. ¶¶ 8-9; Pl. Opp., Ex. E (ECF No. 27-1 at 12). Plaintiff asserts that Lawless and her fellow prosecutors knew she would not be available to try the case as scheduled yet withheld this information from the trial court when the government filed a motion to continue the trial. *See* Compl. ¶ 9; Pl. Opp. at 10, 16. According to Plaintiff, there was "no justifiable reason to grant a continuance from January 2, 2018 until January 29, 2018," Pl. Opp. at 16, "based on trial counsel's [s]o-called 'unavailability,'" Pl. Opp., Ex. A (ECF No. 27-1 at 2), and the continuance violated the Speedy Trial Act by exceeding "the 70 day statutory maximum in which a trial must begin," Pl. Opp. at 16.[2] Plaintiff seeks "to establish the earliest date in which DOJ employees became aware" of

---

[2]   Generally, "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Certain periods of time can be excluded from the computation, *see* 18 U.S.C. § 3161(h), and a presiding judge may grant a continuance "on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," *id.* § 3161(h)(7)(A), and, among other factors, a judge considers "[w]hether the failure to grant such a continuance in

Lawless' elective surgery and to determine the amount of time Lawless spent working on his criminal case.  Compl. ¶ 8.

Plaintiff sent identical FOIA requests to the EOUSA and to the United States Attorney's Office for the Western District of Kentucky ("USAO-WDKY") "for information that related to a third party located in the Louisville, Kentucky Office," namely Jo E. Lawless.  Francis Decl. ¶ 21; *see id*., Attach. A (ECF No. 23-3 at 18-19); Compl., Ex. B (ECF No. 1-1 at 5-7); Def. SMF ¶ 15.  Specifically, he sought:

> 1.  For the period July 1, 2017, through January 31, 2018.
> 2.  All Emails and written correspondence, pertaining to request for paid or unpaid absence from work due to medical reasons, including Family Medical Leave Act request for the period above for Ms. Jo E. Lawless, Assistant United States Attorney, located in Louisville, Kentucky for the Western District.
> 3.  All Emails and written correspondence, from Ms. Jo E. Lawless, Assistant United States Attorney, to her immediate supervisor, Mr. Russell Coleman, United States Attorney, Mr. Spencer McKiness, Assistant United States Attorney, and her Human Resources Department pertaining to any paid or unpaid leave from work due to medical reasons.  For the above period in item # 1
> 4.  All Emails and written correspondence, from Mr. Russell Coleman, United States Attorney, Mr. Spencer McKiness, Assistant United States Attorney, Ms. Lawless's Human Resources Department confirming or arranging or discussing any paid or unpaid time away from work for Ms. Lawless, for the above time period in item # 1 above.

---

a case . . . would unreasonably deny the defendant or the Government continuity of counsel," *id*. § 3161(h)(7)(B)(iv).

Plaintiff's Speedy Trial Act challenge before the trial court was unsuccessful.  "[T]he Court found that continuing the trial for twenty-seven days would provide the Government continuity of counsel and the reasonable time necessary for effective preparation and that the delay should therefore be excluded in computing the time within which the trial must commence under the [Speedy Trial Act]." *United States v. Martin*, 334 F. Supp. 3d 860, 863 (W.D. Ky. 2018), *aff'd*, 780 F. App'x 248 (6th Cir. 2019).

> 5. The dates and hours spent by Ms. Jo E. Lawless, Assistant United States Attorney on case number 3:17-CR-00141-DJH, Donald Lynn Martin, for the period September 1, 20I7 through April 30, 2018, located in the Louisville, Kentucky office.

Def. SMF ¶ 17.

By letter dated June 13, 2022, *see* Francis Decl., Attach. B (ECF No. 24-3 at 21-22), EOUSA denied the request in full under Exemptions 6 and 7(C), explaining that Plaintiff sought information about a third party "without first showing . . . proof of consent, proof of death, or specifying the public interest that would be served by disclosing the desired information." Def. SMF ¶ 20.[3] Because the June 13, 2022, letter did not respond to paragraph 5 of the request, EOUSA staff prepared an amended denial letter on July 21, 2022, *see* Francis Decl. ¶ 33, but due to administrative error, *see id.* ¶ 34, did not send the letter to Plaintiff until September 14, 2022, Def. SMF ¶ 22. The letter repeated EOUSA's denial of paragraphs 1-4 and issued a "no records" response to paragraph 5. *Id.*

Meanwhile, on June 9, 2022, EOUSA sent Plaintiff's request to USAO-WDKY for processing, *see id.* ¶¶ 23, 28, and its FOIA Contact coordinated searches for responsive records, *see* Decl. of Robin K. Brown (ECF No. 24-4, "First Brown Decl.") ¶¶ 4, 6. That search yielded eight pages of responsive records. *See* Def. SMF ¶ 24.

On review of the documents forwarded from USAO-WDKY, EOUSA staff determined that one of the eight pages was "a non-responsive cover page." *Id.* ¶ 26. "[T]he remaining seven pages comprised four emails" which, although responsive to paragraphs 1-4 of Plaintiff's FOIA request, EOUSA withheld in full under Exemption 6. *Id.* EOUSA notified Plaintiff of its

---

[3] Having concluded that the responsive records are not law enforcement records, EOUSA no longer relies on Exemption 7(C). Francis Decl. ¶ 47.

determination by letter dated March 22, 2023. *Id.* ¶ 27. No records responsive to paragraph 5 were found. *Id.* ¶¶ 41-43.

III. DISCUSSION

    A. Summary Judgment Standard

Summary judgment is proper where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Holcomb*, 433 F.3d at 895. Courts must view "the evidence in the light most favorable to the non-movant[ ] and draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor. *Lopez v. Council on Am.–Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

FOIA cases are typically decided on motions for summary judgment. *See Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment for the agency is only appropriate when an agency demonstrates that it has fully discharged its FOIA obligations, *see Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996), by complying with requests and making records available unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009); *see* 5 U.S.C. §§ 552(a)–(b).

B. Adequacy of the Search for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).  The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry v. Block*, 684 F.2d 124, 127 (D.C. Cir. 1982), and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).  In assessing the adequacy of an agency's search, the court need not determine "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs.*, 926 F.2d at 1201.

1. Searches of USAO-WDKY Records

EOUSA forwarded Plaintiff's request to USAO-WDKY because it was the office Plaintiff "expressly identified" as the place where responsive records likely would be found and the office which prosecuted Plaintiff's criminal case.  Francis Decl. ¶ 24; *see* Def. SMF ¶ 28.

Declarant Robin Brown, FOIA Contact at USAO-WDKY, coordinated the search.  *See* First Brown Decl. ¶¶ 1-2, 6.  She first contacted three individuals mentioned in the request and currently employed at USAO-WDKY: Jo E. Lawless, Byron Calhoun (Criminal Chief and Lawless' current immediate supervisor), AUSA Spencer McKiness, and the Human Resource

Administrator. Def. SMF ¶ 31; *see* First Brown Decl. ¶¶ 8-9. She asked them "to manually search their emails and written correspondence for any responsive records." First Brown Decl. ¶ 9. On the belief that the USAO-WDKY's Administrative Officer "may have been involved in AUSA Lawless' . . . leave requests," Brown asked her to search manually for emails and written correspondence responsive to Plaintiff's request. *Id*. ¶ 9; Def. SMF ¶ 32. And on the belief that AUSA Stephanie Zimbahl "was AUSA Lawless' supervisor during the relevant time period," Brown asked that she, too, "perform a manual search for responsive records." First Brown Decl. ¶ 13. Neither McKiness, Calhoun nor the Administrative Officer located responsive records. *See id*. ¶ 10. The Human Resource Administrator and Lawless forwarded potentially responsive emails to Brown on June 13, 2022, and June 24, 2022, respectively. *Id*.; *see* Def. SMF ¶ 39.

Brown assigned the search of emails of Russell Coleman, former United States Attorney for the Western District of Kentucky, to an IT Specialist, Def. SMF ¶ 35, who conducted a search within the date range specified in the FOIA request, from July 1, 2017 through January 31, 2018, using the following combinations of search terms: (1) 'Jo' and 'leave'; (2) 'Jo' and 'surgery'; (3) 'Lawless' and 'leave'; and (4) 'Lawless' and 'surgery,'" *id*. ¶ 35; *see* First Brown Decl. ¶ 11. When Brown learned that another AUSA, now retired, was Lawless' supervisor at the time, she asked an IT Specialist "to search the retired AUSA's emails for responsive records between the dates of July 1, 2017 and January 31, 2018 using the same search term combinations used to search Mr. Coleman's emails." First Brown Decl ¶ 14. The IT Specialist located 152 potentially responsive emails from Mr. Coleman's account and 107 potentially responsive emails from the retired AUSA's account. First Brown Decl. ¶ 16; *see* Def. SMF ¶ 39.

Brown declared that the search "extended to every location and USAO system of records," including Microsoft Outlook email, "where it was reasonably likely that responsive

records would be found[.]" First Brown Decl. ¶ 17. No search of personnel files was conducted because the Human Resource Administrator advised that such files "would not contain copies of emails or written correspondence." *Id*. ¶ 20. Brown reviewed the search results and identified four emails (seven pages) responsive to paragraphs 1-4 of Plaintiff's FOIA request. First Brown Decl. ¶¶ 18-19; Def. SMF ¶ 40.

Regarding paragraph 5 of the request, no responsive records were found at USAO-WDKY. *See* Def. SMF. ¶¶ 41-42. "[T]he only system of records in which AUSAs at USAO-WDKY log their hours, USA-5, does not account for hours spent per each case," Def. SMF ¶ 42; Brown Decl. ¶ 21, and AUSA Lawless herself "never logged hours spent per case," Def. SMF ¶ 43. Plaintiff did not challenge Defendants' "no records" response to paragraph 5 of his FOIA request, but deems the search for records responsive to paragraphs 1-4 inadequate for several reasons, none sufficient to defeat summary judgment.

2. Plaintiff's Challenges to Search of USAO-WDKY Records

First, Plaintiff contends that the search for responsive records to a request for "all emails and written correspondence" was restricted unreasonably to emails among Lawless, Coleman, McKiness, Calhoun and the Human Resource Administrator, thus "excluding any outside parties" who may have had responsive records. Pl. Opp. at 5. But no agency "is . . . obligated to look beyond the four corners of the request for leads to the location of responsive documents," *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996), and Plaintiff cannot fault Defendant for having confined its search to USAO-WDKY, the office Plaintiff identified as the location where responsive records would be found. Plaintiff neither identifies the "outside parties" nor argues convincingly that EOUSA should have searched for responsive records anywhere other than USAO-WDKY, as he fails even to suggest what other office(s) or

individuals might have records responsive to his FOIA request.  *See Antonelli v. U.S. Parole Comm'n*, 619 F. Supp. 2d 1, 4 (D.D.C. 2009) (rejecting plaintiff's challenge to agency's search based on claim that additional records exist in files of other DOJ components because "an agency component is obligated to produce only those records in its custody and control at the time of the FOIA request").

Second, Plaintiff argues that having USAO-WDKY "employees search their own files rather than have an independent third party . . . or the IT Specialist, or a representative from Administration or Human Resources conduct the search" creates "an 'appearance of impropriety'."  Pl. Opp. at 5 (emphasis removed).  This argument is unpersuasive, and as long as employees' searches of their email accounts are reasonably calculated to uncover responsive records, a third party need not conduct the search.  *See Akel v. Dep't of Justice*, 578 F. Supp. 3d 88, 98 (D.D.C. 2021) (approving search by AUSAs of emails saved in their respective files). Furthermore, Brown need not have conducted the search herself to submit a declaration describing the search.  "FOIA declarants are not required to have personal knowledge of the search itself, but rather personal knowledge of the procedures used in handling a FOIA request and familiarity with the documents in question.'"  *Montgomery v. Internal Revenue Serv.*, 40 F.4th 702, 716 (D.C. Cir. 2022) (citations, internal quotation marks, and brackets omitted); *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) ("Declarants are not required to participate in the search for records.").  Rather, where the declarant attests to her personal knowledge of the procedures for handling a FOIA request and her familiarity with the request and documents at issue, the declarant does not run afoul of Federal Rule of Civil Procedure 56 by including "statements . . . based on information . . . obtained in the course of [her] official duties."  *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009);

*see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 814 (2d Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search."); *Wisdom v. U.S. Trustee Program*, 232 F. Supp. 3d 97, 115 (D.D.C. 2017) ("Hearsay is . . . acceptable for FOIA affidavits.").

Third, Plaintiff contends that the phrase "'written correspondence' would and should include any Letters, forms or text messages, such as 'Family Medical Leave Act' request, or requests for vacation, personal time off . . . , sick days, leaves of absence, or any other request to be absent from work." Pl. Opp. at 5. The court notes that an agency "read[s] a FOIA . . . request as it is drafted—not as the requester might wish it was drafted." *Mogenhan v. Dep't of Homeland Sec.*, No. 06-cv-2045 (EGS), 2007 WL 2007502, at *3 (D.D.C. July 10, 2007) (citing *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984)). Plaintiff's request neither sought forms, text messages, instant messages, nor "all records" regarding Lawless and medical leave. Defendants did not violate FOIA when the search targeted emails and written correspondence, not records Plaintiff did not identify in his request.

Fourth, Plaintiff contends the search was inadequate because it was limited to Microsoft Outlook and therefore not "reasonably calculated to locate all relevant documents." Pl. Opp. at 5 (emphasis in original). He posits that email messages, which by now are about five years old, "may have been deleted from current files" and archived in a "backup system" called "Enterprise Vault," and EOUSA's declarant did not mention searching Enterprise Vault. *Id*. at 7. Plaintiff's argument does not stand up to Defendant's declarations, the first of which avers that USAO-WDKY's search "extended to every location and USAO system of records where it was

reasonably likely . . . responsive records would be found, which included Microsoft Outlook email." First Brown Decl. ¶ 17. The declarant further clarifies:

> [The Human Resource Administrator, Administrative Officer, McKiness, Calhoun, and Lawless] searched for responsive emails and written communications by searching (1) USA Email Search Portal, (2) a combination of the USA Email Search Portal and Microsoft Outlook, or (3) a combination of USA Email Search Portal and .pst files, if that individual had saved a .pst file of emails from the time listed in [Plaintiff's] FOIA request. AUSA Spencer McKiness, however, searched only his "Martin file" in Microsoft Outlook where he maintains all emails and written correspondence related to [Plaintiff's] prosecution. Each of these individuals also stated that they searched these systems of records by using keyword searches reasonably related to [Plaintiff's] FOIA request, including variations of AUSA Lawless' name. Any emails gathered from these searches would have included attachments.

Supp. Decl. of Robin K. Brown (ECF No. 31-1) ¶ 6. She describes "Outlook [as] a desktop application that allows employees to view and organize e-mails," and "USA Email Search Portal [as] a web-based application that retains archive[d] emails." *Id*. ¶ 10. According to the declarant, there is "no other record system that is likely to produce responsive documents." *Id*. ¶ 11. Although there was no search of a so-called "Enterprise Vault," the declarant adequately demonstrates that a search of Microsoft Outlook, USA Email Search Portal, and .pst files serves the same function – a search of archived email messages.

Fifth, Plaintiff claims the search terms the IT Specialist used to search Coleman's and the retired supervisor's email accounts were deficient because the terms would not capture "all possible records regarding time off from work." Pl. Opp. at 5. He suggests terms including "vacation" and "FMLA" with "Lawless." *Id*. But a requester "cannot dictate the search terms for his . . . FOIA request." *Bigwood v. U.S. Dep't of Defense*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (citing *Physicians for Human Rights v. Dep't of Defense*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009)). Instead, an agency ordinarily has "discretion in crafting a list of search terms as

long as they are reasonably tailored to uncover documents responsive to a FOIA request," and "where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015). Here, without disputing the search terms used, Plaintiff merely speculates that use of different search terms could yield different results, and such speculation "does not necessarily undermine the adequacy of the agency's actual search." *Id*. The court concludes that using search terms "Jo" and "Lawless" in conjunction with "leave" and "surgery," *see* First Brown Decl. ¶ 11, was reasonable, and Plaintiff's unsupported assertion that additional search terms may have located additional responsive records does not undermine the search.

Sixth, Plaintiff considers it "inconceivable" that neither the Human Resource Administrator nor Administrative Officer had "records requesting absences from work by Ms. Lawless that would be consistent with the 'time-frame' of her surgery," Pl. Opp. at 5, and seventh, doubts that, out of 259 emails deemed potentially responsive to his FOIA request, "not a single one contained any information regarding Ms. Lawless and an absence from work," *id*. at 6. These arguments focus on the *results* of the search, and a search is not inadequate just because it does not yield the exact information a requester wants. "[T]he agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (citation omitted); *see Parker v. U.S. Immigration & Customs Enforcement*, 238 F. Supp. 3d 89, 102 (D.D.C. 2017) ("In this circuit, it is clear that a plaintiff's unsubstantiated belief that missing records exist cannot demonstrate the inadequacy of an agency's search."). "[T]he proper inquiry is . . . whether the

agency conducted a search reasonably calculated to uncover relevant documents," *Bigwood*, 132 F. Supp. 3d at 135 (citations omitted), and here Defendants meet their burden.

C. Exemption 6

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The court's first task in assessing whether this exemption applies is to determine whether the responsive records are personal, medical, or similar files. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008). Protection under Exemption 6 is not limited to "a narrow case of files," but instead "cover[s] detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). In other words, Exemption 6 is designed "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information" maintained in government records, *id*. at 599, regardless of "the label on the file," *id*. at 601 (citation omitted).

Next, the court must determine whether disclosure of the third-party information "would constitute a clearly unwarranted invasion of personal privacy." *Multi Ag Media*, 515 F.3d at 1228 (quoting 5 U.S.C. § 552(b)(6)). "This second inquiry requires [the court] to balance the privacy interest that would be compromised by disclosure against any public interest in the requested information." *Id*. (citations omitted). Here, the only relevant public interest the court must consider is the underlying purpose of the FOIA: to "shed[] light on an agency's performance of its statutory duties[.]" *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).

An agency may withhold information pursuant to an exemption only if it "reasonably foresees that disclosure would harm an interest protected by" that exemption. 5 U.S.C. § 552(a)(8)(A). This rule, which applies to FOIA requests made after June 30, 2016, *Reporters Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 358 (D.C. Cir. 2021), requires the withholding agency to provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure of the contested records," *New York Times Co. v. Off. of Mgmt. & Budget*, 531 F. Supp. 3d 118, 123–24 (D.D.C. 2021) (citation and internal quotation marks omitted).

The seven pages of responsive records "relate[d] to one particular individual, AUSA Lawless, and according to the declarant, Attorney-Advisor Tricia Francis, they "consisted of emails disclosing the underlying medical reasons for AUSA Lawless' leave, [her] condition following a medical procedure and the times when her conditions improved, communications showing when AUSA Lawless would need to take leave, the type of work schedule she would be on during her recovery, and the persons with whom she and others shared such sensitive information." *Id*. ¶ 49. Francis determined that Lawless has "a substantial privacy interest in not having her personnel requests related to any underlying medical reasons released publicly," as disclosure "would cause her to suffer embarrassment by association with that information." *Id*. ¶ 45.

Francis further stated that, "to the extent any of these records would include five-year old sensitive medical and personnel information, the disclosure of this information publicly to other colleagues, judges that she appears before as a federal prosecutor, or even personal contacts and individuals who do not know anything about her, may well embarrass her because of her public association with this medical and personnel information." *Id*. And she stated that "[t]he threat to

AUSA Lawless' interest if these emails were disclosed, is real," *id*. ¶ 51, and "likely and foreseeable in light of Plaintiff's intent to publicly use the information to attack his conviction directly or collaterally in a criminal case," *id*. ¶ 52.  Disclosure would mean revealing medical and personnel information not only to Plaintiff, but also to Lawless' colleagues, judges before whom she appears as an AUSA, and strangers who otherwise would be unaware of these sensitive matters, *see id*., which "may well embarrass her[.]" *Id*. ¶ 51.  And "given the sensitivity of the information, the unwarranted intrusion alone from disclosure . . . , with or without embarrassment, serves just as valid of a threat to . . . Lawless' privacy interest," *id*.  Accordingly, Francis averred, the threat to Lawless' "privacy is legitimate and not speculative." *Id*. ¶ 53.

Next, Francis determined "that no . . . public interest exists" to justify disclosure of the responsive records, *id*. ¶ 50, as information regarding Lawless' medical condition, medical leave, and subsequent work schedule, sheds no "light on the activities of a government agency in the performance of its statutory duties," *id*., to include enforcement of federal law, defense of the interests of the United States, ensuring public safety against foreign and domestic threats, and ensuring "fair and impartial administration of justice for all Americans," *id*. ¶ 43.  Rather, Francis stated, Plaintiff has a personal interest in this information, and its disclosure "would not enhance the public's understanding of how the DOJ enforces the law and defends the interests of the United States according to the law; ensures public safety against threats foreign and domestic; provides federal leadership in preventing and controlling crime; seeks just punishment for those guilty of unlawful behavior; and ensures fair and impartial administration of justice for all Americans." *Id*. ¶ 54.  Thus, EOUSA withheld in full seven pages of email messages. *See id*. ¶ 56.

Plaintiff does not dispute that these email messages are "personnel and medical files and similar files," 5 U.S.C. § 552(b)(6), which apply to a particular individual. Instead, he makes two arguments for their release. First, he asserts that information about Lawless' surgery already is on the public record: it is mentioned in the publicly available motion to continue his criminal trial. *See* Compl. ¶ 9; Pl. Opp. at 27. He argues that "this public information has in no way caused . . . Lawless to suffer any embarrassment between other colleagues, judges or personal contacts and individuals as suggested by Ms. Francis." Pl. Opp. at 27 (internal quotation marks omitted).

Second, Plaintiff argues there exists a public interest in disclosure which outweighs Lawless' privacy interest. He contends that the government knew on October 25, 2017, the date of Plaintiff's arraignment, that Lawless would not be available on January 2, 2018, the date the trial was to begin, intentionally withheld this information, and used Lawless' absence to justify a continuance to January 29, 2018, *see id*. at 10-11, "exceed[ing] the 70 day statutory maximum in which a trial must begin," *id.* at 16, under the Speedy Trial Act. According to Plaintiff, "the public very much has an interest and a right to know [what] the United States Attorney[']s Office is doing to defendants when it comes to manipulating the law, withholding critical information from courts, disadvantaging defendants all in an attempt to gain a conviction." *Id*. at 19. Neither argument has merit.

It is true that, under the "public-domain doctrine, materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). Consequently, Plaintiff must demonstrate "the specific information sought . . . already [has] been disclosed and preserved in a permanent public record." *Pike v. U.S. Dep't of Justice*, 306 F. Supp. 3d 400, 410

(D.D.C. 2016) (citation and internal quotation marks omitted), *aff'd*, No. 16-5303, 2017 WL 2859559 (D.C. Cir. June 23, 2017). Even if Lawless' surgery is mentioned in court documents, public mention of the *fact* of surgery is far different than the information EOUSA withholds, particularly the underlying medical reasons for Lawless' absence, post-surgery progress and work schedule, *see* Francis Decl. ¶ 49, and Plaintiff does not demonstrate that such details have made their way into the public domain. "Prior disclosure of similar information does not suffice[.]" *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citation omitted).

No more successful is Plaintiff's assertion of a *public* interest in disclosure of information about Lawless. It is apparent that Plaintiff's interest is personal: pursuit of claims of Speedy Trial Act and Sixth Amendment violations, *see* Compl. ¶ 5; Pl. Opp. at 17, which, if proven, purportedly are grounds "to dismiss all charges against [him] with prejudice," Pl. Opp. at 20, and to order his "immediate release from custody," *id*. In no way do these goals align with FOIA, the principal purpose of which is make public information "about the conduct of the agency that has possession of the requested records." *Reporters Comm.*, 489 U.S. at 773. Here, given his focus on a single AUSA and her participation in a single criminal case, it cannot be said that disclosure of information about Lawless' medical condition either "contribut[es] significantly to public understanding of the operations or activities of the government," *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Reporters Comm.*, 489 U.S. at 776) (emphasis removed), or "sheds light on an agency's performance of its statutory duties," *id*. (quoting *Reporters Comm.*, 489 U.S. at 773).[4]

---

[4] Plaintiff also claims the responsive records "[e]stablish[] bias by Judge Hale towards [Plaintiff]," Pl. Opp. at 13, given Hale's former position as United States Attorney for the Western District of Kentucky. Plaintiff posits that Judge Hale's presumed acquaintance with and supervision of Lawless and McKiness, *see id*. at 14-15, "create a cloud of conflict between Judge Hale and the government which in turn affects the Judge's 'duty' to [Plaintiff] in a speedy and

D. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). The court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Under Exemption 6, EOUSA withholds in full all seven pages of emails gathered in response to paragraphs 1-4 of Plaintiff's April 2022 FOIA request, *see* Def. SMF ¶ 27, and its declarant avers that "all material is exempt from disclosure under Exemption 6, [leaving] nothing to segregate," Francis Decl. ¶ 57. Plaintiff contends that the declarant "makes no attempt to explain or provide any information that may be non-exempt," Pl. Opp. at 9, and presumably faults the declaration as conclusory. While the declaration is short on detail, it still is entitled to a presumption of good faith. It is enough that Francis established the information withheld falls within the scope of Exemption 6 and that all of the seven pages of emails contain personnel and medical information about AUSA Lawless.

---

impartial trial," *id*. at 15 (emphasis removed). He implies that Judge Hale's sympathy towards Lawless prompted him to grant the continuance, to Plaintiff's detriment, and again demonstrates Plaintiff's personal interest in the records insofar as the judge's alleged bias undermines the validity of the criminal trial.

III. CONCLUSION

The court concludes that EOUSA conducted reasonable searches for records responsive to Plaintiff's April 28, 2022, FOIA request, that it properly withheld in full under Exemption 6 pages of responsive records, and that no segregable information can be released. Accordingly, Defendants' motion for summary judgment is GRANTED. An Order is issued separately.

DATE:  September 1, 2023                    /s/
                                            TANYA S. CHUTKAN
                                            United States District Judge